**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LAURALEE DONALDSON | : | |
| | : | CASE NO. |
| Plaintiff, | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| | : | |
| EUROFINS SCIENTIFIC, INC. and | : | |
| EUROFINS MTS CONSUMER PRODUCT | : | |
| TESTING US, INC. | : | |
| | : | |
| Defendant. | : | OCTOBER 31, 2024 |

## COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under Connecticut State Law.

2. The jurisdiction of this court is founded pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as Defendant has significant contacts to this District, and the primary events giving rise to Plaintiff's claims occurred herein.

4. At all times relevant hereto, and in all the actions described herein, Defendant's actions took place in the State of Connecticut.

5. Defendant did the acts and omissions herein alleged in bad faith and with knowledge that its conduct violated well established and settled law in the State of Connecticut.

THE MCMINN EMPLOYMENT LAW FIRM, LLC

THE MCMINN EMPLOYMENT LAW FIRM, LLC

## PLAINTIFF

6. The Plaintiff, Lauralee Donaldson ("Plaintiff" or "Donaldson"), is a natural person and resident of the town of North Haven, and state of Connecticut.

## DEFENDANTS

7. The Defendant, Eurofins Scientific, Inc. is headquartered in Luxembourg, Germany, formed under the laws of the State of Delaware, with a primary place of business located at 349 Lenox Steet, Norwood, MA 02062, and conducts substantial business in Connecticut.

8. The Defendant, Eurofins MTS Consumer Product Testing US, Inc. is formed under the laws of the State of Delaware, with a principal place of business located at 349 Lenox Steet, Norwood, MA 02062, and conducts business in the state Connecticut, employing Plaintiff.

9. The Defendant, Eurofins MTS Consumer Product Testing US, Inc. is a division of Defendant Eurofins Scientific, Inc. (collectively referred to as "Defendants" or "Eurofins").

## FACTUAL ALLEGATIONS

10. On or about June 11, 2024, Ms. Donaldson met with Seemanta Mitra ("Mitra"), Vice President – Softlines & Hardlines, in New York City to interview for a position at Eurofins.

11. During this June 11, 2024 meeting, Ms. Donaldson was given a verbal employment offer with a starting salary of $165,000 and a $55,000 annual bonus with four weeks of vacation pay.

12. At that time, Mr. Mitra, who would be Ms. Donaldson's supervisor, told Ms. Donaldson the process of obtaining an official employment offer letter could take time but not to worry.

13. Ms. Donaldson received her official employment offer letter from Eurofins on or about June 26, 2024 that was sent to her personal e-mail address.

14. On or about June 26, 2024, Ms. Donaldson also received a request for drug screening and a background check. The background check was completed on July 2, 2024.

15. Ms. Donaldson had her drug screening done on July 5, 2024.

16. Ms. Donaldson's agreed upon start date at Eurofins was July 8, 2024. On her first day, she was asked to travel to Massachusetts and stay overnight for in-person meetings at the Eurofins Mass Norwood Lab.

17. On July 16, 2024, Ms. Donaldson received an e-mail from Elwood Brandt ("Brandt"), Director for Talent Engagement, asking her to call him, which she did immediately.

18. During this call, Mr. Brandt informed Ms. Donaldson that her drug screening had indicated positive results for cocaine. Ms. Donaldson explained that she takes the medication lisdexamfetaine 40MG, as prescribed by her doctor, and that would explain the positive results as she does not use cocaine.

19. After Ms. Donaldson's conversation with Mr. Brandt, she called her doctor and asked how she could test positive for cocaine. Ms. Donaldson's doctor reminder her that she recently had blood work done and everything came back clean. He stated that there could be an error with the samples and suggested retesting at a new facility.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

20. On or about July 17, 2024, Ms. Donaldson called the phone number Mr. Brandt provided to her in an attempt to submit a copy of her prescription for lisdexamfetaine to the vendor Accurate Background. Both calls seemed to be made to an offshore call center with poor customer service, and the representatives could not locate any record of Ms. Donaldson's drug screening or under the name Eurofins.

21. Mr. Brandt informed Ms. Donaldson that Eurofins was doing a full investigation into the vendor, yet she was never provided with any follow-up to their findings.

22. On or about July 17, 2024, Ms. Donaldson called Mr. Brandt and left a voicemail with details about her issues with the vendor. He did not return her call.

23. On or about July 18, 2024, Ms. Donaldson emailed Mr. Brandt stating she was following up on her voicemail from the day before about the issues she faced when calling the vendor for the drug screening.

24. On or about July 18, 2024, Allison Holder from Eurofins Talent Engagement provided Ms. Donaldson with three additional phone numbers for the vendor to inquire about her drug screening results, but they also had no record for her or Eurofins.

25. On or about July 23, 2024, Ms. Holder suggested that Ms. Donaldson send copies of her prescription to Ms. Holder directly and she would try calling the outside vendor. This also did not remedy the problem.

26. On or about July 26, 2024, at noon, Marjan Wager ("Wagner"), Human Resources Generalist, ordered a new drug test for Ms. Donaldson and apologized for all the issues surrounding the drug screening. Ms. Wagner also sent an email to Talent Engagement to order the new drug test.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

27. That same day, at 2:00 pm, Ms. Wagner asked Ms. Donaldson to join a phone call with her and Mr. Brandt. During that conversation, Mr. Brandt stated the company cannot retest a new blood sample but can only retest the original specimen.

28. Ms. Donaldson reminded Mr. Brandt she had been trying to do this, yet each time she called the numbers that he had provided there was never any record of her prior test or Eurofins with the vendor. Mr. Brandt then provided Ms. Donaldson with a specimen number for the first time. He also asked if Ms. Donaldson could cover the $150 cost of the retest, and then she could expense it or see if they can invoice Eurofins directly.

29. After this call, Mr. Brandt emailed Ms. Donaldson and documented in writing the specific drug that tested positive from the first screening after Ms. Donaldson specifically asked him not to do that until the situation was fully investigated.

30. When Ms. Donaldson called the outside vendor with the specimen number, they informed her that the specimen was no longer available after 72 hours. Ms. Donaldson immediately informed Ms. Wagner and Mr. Brandt about this, and Mr. Brandt said, "Let me see what I can do."

31. Two hours later, Ms. Donaldson's employment was terminated during a call with Ms. Wagner. Ms. Donaldson asked how the company went from allowing her to retest to terminating her within only a couple hours.

32. Ms. Wagner's response was to apologize to Ms. Donaldson and state the company will be meeting the following week to ensure this does not happen again.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

33. On or about July 26, 2024, Ms. Donaldson sent an email to Ms. Wagner, Mr. Mitra, and Gregg Tiemann contesting the decision to terminate her employment. She received no response.

34. On or about August 9, 2024, Ms. Donaldson received a letter on August 9, 2024 from Eurofins confirming her termination.

35. Upon information and belief, another Eurofins employee had similar problems with his drug screening where he had to be screened again twice because of errors.

36. Ms. Donaldson was punished for the mishandling of her drug screening by an outside vendor.

37. Ms. Donaldson was very cooperative in trying to clear up this situation by providing copies of her prescription and offering to retest immediately. Yet Eurofins opted to punish Ms. Donaldson by terminating her employment instead of fairly rectifying this situation.

## COUNT ONE

## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

38. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-37 with the same force and impact as if fully set forth herein.

39. Connecticut recognizes a common law cause of action for wrongful discharge based on a violation of public policy.

40. Defendants terminated Plaintiff's employment due to erroneous drug screening results that were due to no fault by Plaintiff.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

41. Plaintiff was very cooperative in trying to clear up this situation by providing copies of her prescription that may have affected the results, and by offering to retest immediately.

42. Despite Plaintiff's cooperation, Defendants opted to wrongfully punish Plaintiff by terminating her employment instead of fairly rectifying this situation.

43. Plaintiff's discharge, as set forth above, violated important public policies in the State of Connecticut, including, but not limited to, policies with respect to an employee's rights to be subjected to a fair process when being required to submit to drug screening as part of the new hire process.

44. Plaintiff is otherwise without remedy and permitting her discharge to go unredressed would leave a valuable social policy to go unvindicated.

45. As a result of her wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

46. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

**COUNT TWO**

**NEGLIGENCE**

47. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-46 with the same force and impact as if fully set forth herein.

48. Defendants owed Plaintiff a duty to not act negligently with respect to the drug screening process Defendant required of Plaintiff at the time her employment began.



THE MCMINN EMPLOYMENT LAW FIRM, LLC

THE MCMINN EMPLOYMENT LAW FIRM, LLC

49. Defendants breached their duty, by, among other things,

   a) subjecting her to a mishandled drug screening that resulted in inaccurate drug screening results,

   b) not affording Plaintiff the opportunity to undergo a new drug screening with a different company; and

   c) punishing Plaintiff by terminating her employment instead of fairly rectifying this situation.

50. Defendants knew or should have known that their actions, described herein, would cause harm to Plaintiff. Defendant acted in conscious disregard of such foreseeable risk. Defendant's actions in engaging in the above-referenced practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff.

51. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

52. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
LAURALEE DONALDSON

By: ___________/s/______________
Michael C. McMinn (#*ct27169*)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

COUNSEL FOR PLAINTIFF

THE MCMINN EMPLOYMENT LAW FIRM, LLC