**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LAURALEE DONALDSON, ) | 3:24-CV-01736 (SVN) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| EUROFINS MTS CONSUMER ) | |
| PRODUCT TESTING US, LLC, ) | |
| *Defendant*. ) | February 27, 2026 |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND**
**TRANSFERRING ACTION**

Sarala V. Nagala, United States District Judge.

In this employment action, Plaintiff Lauralee Donaldson alleges that Defendant Eurofins

MTS Consumer Product Testing US, LLC ("Eurofins") wrongfully terminated her employment

due to erroneous drug screening results.  Sec. Am. Compl. ("SAC"), ECF No. 45.  The second

amended complaint consists of three claims: common law wrongful termination, common law

negligence, and a violation of Conn. Gen. Stat. §§ 31-51t–u, which prohibit subjecting an

employee to an adverse employment action based on a single drug testing result alone, under

certain circumstances.

Eurofins seeks to dismiss Plaintiff's SAC, claiming that this Court does not have personal

jurisdiction over it; and in the alternative, Eurofins argues that this case should be transferred to

the District of Massachusetts.  Eurofins also argues that, in any event, the SAC fails to state a

claim for relief.  *See* Am. Mot. to Dismiss, ECF No. 50.  Plaintiff opposes the motion. Opp. Mot.

to Dismiss, ECF No. 56.

For the reasons described below, the Court holds that it lacks personal jurisdiction over Eurofins and thus grants Eurofins' motion to dismiss in part. Further, the Court exercises its discretion to transfer this action to the District of Massachusetts.

## I.    FACTUAL BACKGROUND

### A.  Factual Allegations

The following allegations are accepted as true for the purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the spring of 2024, Plaintiff received a call from Eurofins' director of business development, Anthony Hernandez, inquiring about whether she was interested in working with the company. ECF No. 45 ¶ 10. Plaintiff expressed interest in a job opportunity, and Mr. Hernandez advised her to reach out to his supervisor, Mr. Seemanta Mitra, which Plaintiff did. *Id.* ¶¶ 13–14. Plaintiff met with Mr. Hernandez and Mr. Mitra on two occasions, and received a verbal offer of employment at each meeting. *Id.* ¶¶ 16–18, 22–23.

On June 26, 2024, Plaintiff received an official offer of employment from Eurofins via email, along with a request that she complete a drug screening and background check. *Id.* ¶¶ 25–26. Plaintiff completed the background check on July 2, 2024. *Id.* ¶ 26. On July 5, 2024, Plaintiff provided her sample[1] for the drug screening to Accurate Background, LLC ("Accurate").[2] *Id.* ¶ 27. Plaintiff observed that the drug testing location, operated by a third party, "also served as an unsanitary methadone clinic," and alleges that a technician at the location informed her that her sample may have been "insufficient for testing." *Id.* ¶¶ 28–29.

---

[1] Plaintiff's complaint suggests she provided a "blood sample," *see id.* ¶ 49, but in her response to Eurofins' motion, she indicates she provided a urine sample, *see* ECF No. 56 at 12.

[2] Eurofins filed a third-party complaint against Accurate Background, LLC, asserting claims for negligence, negligent misrepresentation, indemnification, and contribution. *See* Third Party Compl., ECF No. 57 ¶¶ 20–33. It has since sought to dismiss the third-party complaint, *see* Mot. to Dismiss, ECF No. 83, which the Court has granted, ECF No. 86.

Plaintiff started working at Eurofins on July 8, 2024. *Id.* ¶ 32. Eight days later, Plaintiff was informed by Eurofins that her drug screening indicated positive results for cocaine. *Id.* ¶¶ 33–35. In response, Plaintiff explained to Eurofins that she takes a prescription medication that may have impacted her results. *Id.* ¶¶ 34–35. Plaintiff later shared a photograph of her prescription with Eurofins. *Id.* ¶ 47. Plaintiff also alleges that she has adverse reactions to opiate-based substances and always refuses them when offered by medical providers, as reflected in her medical records. *Id.* ¶¶ 36–37.

Plaintiff attempted to ascertain more information about the drug screening results. She contacted her prescribing doctor, who reminded her that her recent bloodwork did not indicate any drug use and advised she retest at a new facility. *Id.* ¶ 38. She also attempted to contact Accurate regarding her results and share with them a copy of her prescription, but its customer service representatives could not locate any record of her drug screening. *Id.* ¶ 39.

A representative for Eurofins informed Plaintiff that it would conduct an investigation with Accurate, but Plaintiff was not provided with the results of that investigation. *Id.* ¶ 40. After multiple attempts to contact Eurofins regarding her problems communicating with Accurate, Eurofins' representative provided Plaintiff with three additional phone numbers for Accurate. *Id.* ¶¶ 41–43. Plaintiff attempted to inquire about her results at these phone numbers, but encountered the same problem: no one could locate the record of her drug screening. *Id.* ¶ 43. A representative for Eurofins also told Plaintiff she would attempt to contact Accurate, which did not yield any results. *Id.* ¶ 46.

On July 26, 2024, a representative for Eurofins ordered a new drug test for Plaintiff and apologized for the issues Plaintiff had encountered surrounding her drug screening. *Id.* ¶ 48. However, on a call later that same day, Eurofins informed Plaintiff that she actually would not be

permitted to provide a new sample, despite her willingness to do so. *Id.* ¶¶ 49–50. Instead, Accurate could only retest her original specimen. *See id.* ¶ 49. On the call, Eurofins indicated that Plaintiff could take an entirely new test if she was willing to cover the cost herself, and Plaintiff responded that she was willing to do so. *Id.* ¶ 50. Plaintiff then called Accurate to request a retest of the original specimen, but Accurate informed her that the specimen was no longer available to be tested. *Id.* ¶ 52. Two hours later, Eurofins terminated Plaintiff's employment. *Id.* ¶ 53.

Plaintiff sent an email to representatives of Eurofins contesting the decision to terminate her employment, but received no response; on August 9, 2024, Plaintiff received a letter from Eurofins confirming her termination. *Id.* ¶¶ 55–56. Plaintiff alleges, upon information and belief, that another Eurofins employee encountered similar errors in his drug test, but was permitted to undergo a second screening. *Id.* ¶ 57.

Plaintiff alleges that she was very cooperative in attempting to resolve a potential mistake in her drug screening, but instead of working with her to retest the sample, Eurofins opted to wrongfully terminate her employment. *Id.* ¶¶ 58–59. She further alleges that Eurofins acted negligently by subjecting her to a mishandled drug screening, failing to afford her the opportunity to re-test, and terminating her employment. *Id.* ¶ 71.

The complaint contains three counts: (1) common law wrongful discharge in violation of public policy; (2) negligence; and (3) a claim for damages pursuant to Conn. Gen. Stat. § 31-51z, which permits an "aggrieved person" to file a civil action relating to violations of Conn. Gen. Stat. § 31-51t–u, such as when an employer terminates an employee based on a positive urinalysis test that is not confirmed by a second urinalysis test conducted in a manner specified by the statute. *Id.* ¶¶ 60–91.

B. <u>Jurisdictional and Venue Allegations</u>

The parties have submitted the following information in support of their positions on this Court's jurisdiction and the propriety of the District of Connecticut as a venue for this action.

The parties agree that the Court has subject matter jurisdiction over this action, based on complete diversity between the parties and Plaintiff's allegations that the amount in controversy exceeds $75,000.[3] *See id.* ¶¶ 2, 67, 73. Plaintiff is a resident of North Haven, Connecticut. *Id.* ¶ 6. Plaintiff alleges that Eurofins is formed under the laws of the state of Delaware, with a principal place of business in Norwood, Massachusetts, and conducts business in the state of Connecticut, "employing Plaintiff." *Id.* ¶ 7.

In support of its motion to dismiss for lack of personal jurisdiction, Eurofins claims that it has no general or specific contacts with Connecticut because it does not keep an office, is not registered to do business, has never owned or leased real estate, has never had a bank account, has never filed a tax return, and has never appointed an agent for service of process in the state. Mot. to Dismiss Memo., ECF No. 50-1 at 2–3; Mitra Aff., ECF No. 50-3 ¶ 9. Eurofins further claims that it has never employed any individuals in Connecticut other than Plaintiff, and does not target Connecticut with business activity or advertising. ECF No. 50-1 at 3; ECF No. 50-3 ¶¶ 10–12. Additionally, according to Eurofins, *Plaintiff* originally solicited information about potential employment from Eurofins through Mr. Hernandez, and Eurofins did not initiate the relationship. *See* Hernandez Decl., ECF No. 50-2 ¶¶ 4–5; LinkedIn Msg., ECF No. 50-6. Finally, Eurofins notes that Plaintiff's offer letter states that her position is "connected to the legal entity

---

[3] The citizenship of a limited liability company ("LLC") like Eurofins is determined by the citizenship of each of its members. *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 60 (2d Cir. 2016). The Court ordered Eurofins to supplement its corporate disclosure statement to identify the citizenship of each of its members. *See* Order, ECF No. 72. Having reviewed that submission, ECF No. 73, the Court is confident that there is complete diversity between Plaintiff and Eurofins.

based in" Massachusetts, and her non-compete agreement selects Delaware as governing law. Offer Ltr., ECF No. 50-4 at 2; Noncompete Agr. ECF No. 50-5 at 9.

Plaintiff, for her part, asserts that venue is proper in this judicial district because Eurofins has "significant contacts" in Connecticut, and the "primary events giving rise to Plaintiff's claims occurred" in Connecticut. ECF No. 45 ¶ 3.

## II.    PERSONAL JURISDICTION

First, the Court concludes that it lacks personal jurisdiction over Eurofins. Even assuming the requirements of a relevant Connecticut long-arm statute are met, exercising personal jurisdiction over Eurofins would not be consistent with due process.

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff "'bears the burden of establishing personal jurisdiction over the defendant.'" *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala,* 989 F.2d 572, 580 (2d Cir. 1993)). When resolving the issue of personal jurisdiction before trial, a court may conduct an evidentiary hearing "or rely exclusively upon the pleadings and affidavits." *Cooper, Robertson & Partners, LLP v. Vail*, 143 F. Supp. 2d 367, 370 (S.D.N.Y. 2001). "In this way, a motion to dismiss for lack of jurisdiction differs from a Rule 12(b)(6) motion because the court may consider matters beyond the pleadings." *Id.* Where no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of jurisdiction; to the extent the allegations in the complaint are uncontroverted by affidavits from the defendant, the allegations must be taken as true. *See MacDermid*, 702 F.3d at 727–28 (quoting *Seetransport*, 989 F.2d at 580).

Importantly, however, the plaintiff may not rely on "conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer

6

jurisdiction.'" *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). Nor is the Court "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Finally, while the Court construes all pleadings and affidavits in the light most favorable to the plaintiff, it must not "draw argumentative inferences in the plaintiff's favor." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

A federal court may exercise personal jurisdiction over a defendant if (1) a state long-arm statute permits personal jurisdiction and (2) the exercise of jurisdiction satisfies the constitutional requirements of due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). In the Second Circuit, the due process analysis has two components: "the "minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.*; *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)); *see Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (courts must ask whether a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'").

B. <u>Discussion</u>

### 1. *Connecticut's Long-Arm Statute*

The relevant long-arm statute here is Conn. Gen. Stat. § 52-59b(a), which allows for the exercise of jurisdiction over a nonresident LLC that:

> (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the

state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Conn. Gen. Stat. § 52-59b(a). Plaintiff argues only that § 52-59b(a)(5), involving a defendant's use of a computer or computer network with the state, applies here.[4] The Court disagrees.

The Second Circuit has concluded that a defendant's access to a server housed in Connecticut, even if the defendant never physically enters the state, is sufficient to confer personal jurisdiction because a server is a "computer" under the definition in Conn. Gen. Stat. § 53–451(a)(1). *MacDermid, Inc.*, 702 F.3d at 729 ("[T]he statute reaches persons outside the state who remotely access computers within the state"). Accordingly, the law supports the exercise of personal jurisdiction where a plaintiff plausibly alleges that a defendant located out of state "use[d] a computer" located within the state.

But Plaintiff has not made a *prima facie* showing that Eurofins "use[d] a computer" located within Connecticut. To start, the SAC does not specifically allege that Eurofins "use[d]

---

[4] Section 52-59b(a)(2) also provides for jurisdiction over a nonresident LLC that "commits a tortious act within the state," except for defamation of character. Although Plaintiff's brief contains a sparse argument that Defendant "committed a tortious act in Connecticut through their . . . Third-Party Defendant Accurate Backgrounds, LLC, who are alleged to have negligently conducted and/or negligently misrepresented the drug screening test and results," this argument appears in one sentence in the due process section of Plaintiff's brief—not the long-arm statute section— and is not further elaborated upon. *See* ECF No. 56 at 6. As Plaintiff does not appear to advance a tortious act committed within the state as a basis for the exercise of jurisdiction under the long-arm statute, the Court does not address this issue. And in any event, Plaintiff does not explain under what legal theory, if any, the alleged acts of Accurate would be subject *Eurofins* to jurisdiction in Connecticut. Finally, Plaintiff also does not argue that § 52-59b(3), which provides for jurisdiction over a nonresident LLC that commits a tortious act outside the state that causes injury to a person within the state (except for defamation of character), applies here.

8

a computer" located within Connecticut.  In fact, beyond the allegation that Eurofins "employ[ed] Plaintiff" in the state of Connecticut, Plaintiff offers only the assertion that "Defendant's actions took place in the State of Connecticut," which is too conclusory to support the exercise of jurisdiction under the computer provision of the long-arm statute, as it does not specify anything about Defendant's use of a computer within the state.  *See* ECF No. 45 ¶¶ 4, 7.

The Court also cannot consider additional assertions Plaintiff makes in her opposition brief in determining whether Plaintiff has made a *prima facie* showing of personal jurisdiction under the long-arm statute, as she does not offer any sworn affidavits or documentation supporting these positions.  *See* ECF No. 56 at 6 ("Donaldson was hired as a remote employee, expected to be working from home in Connecticut"); 8 ("Eurofins MTS issued Donaldson a computer for her to use for work.  Donaldson remotely accessed Eurofins MTS services from her home in Connecticut, using internet services in Connecticut.  When she was terminated, Eurofins MTS remotely accessed her computer in Connecticut to disable her access."); 9–10 ("Donaldson was working at her home in Connecticut when she attempted to resolve the testing issue and was terminated.").

It is true that a court may consider materials outside the pleadings in evaluating whether it has personal jurisdiction.  *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.*, No. 96-CV-7269 (MBM), 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997) ("Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion" (citations and quotation marks omitted)), *aff'd*, 152 F.3d 920 (2d Cir. 1998); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (a plaintiff may make a *prima facie* showing of personal jurisdiction

"through its own affidavits and supporting materials"). Yet Plaintiff has not submitted any materials *beyond* the SAC and briefing on the motion to dismiss, and has not pointed to any authority indicating that memoranda containing the arguments of counsel, such as her opposition to the motion to dismiss, may be considered if they are unsupported by sworn statements affirming their truth. *Cf. St. Paul Fire & Marine Ins. Co.*, 1997 WL 357989 at *1 (considering "facts . . . drawn from the complaint, affidavits and documentary exhibits"); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) ("constru[ing] the *pleadings and affidavits* in the light most favorable to [the plaintiff]") (emphasis added). Nor can a plaintiff constructively amend her complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss. *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (collecting cases). The Court thus cannot conclude that Plaintiff has plausibly alleged that Defendant "use[d] a computer" in the state of Connecticut, such that § 52-59b(a)(5) would apply here.

Curiously, Plaintiff makes no mention in her opposition brief of § 52-59b(a)(1), which provides for jurisdiction over a foreign LLC that "[t]ransacts any business" in the state—despite that Eurofins discussed this subsection in its opening brief. *See* ECF Nos. 50-1 at 6–7, 56. A sister court (Shea, Chief J.) recently decided—on facts very similar to those at issue here, involving an employee who worked remotely from Connecticut for a nonresident LLC that had no other connections to Connecticut—that § 52-59b(a)(1) permits the exercise of personal jurisdiction over the defendant company because "the affirmative acts of reaching into a forum state to hire a worker, and conducting ongoing communication related to the employment," with knowledge that the worker was working remotely from Connecticut, is sufficient to satisfy the "transacts any business" standard of § 52-59b(a)(1). *See Mills v. Profit Drivers LLC*, No. 3:25-CV-00203 (MPS), 2026 WL 25629, at *5–6 (D. Conn. Jan. 5, 2026).

10

But here, Eurofins has provided evidence that *Plaintiff*, rather than Eurofins, initiated the communications that ultimately led to the job offer through a LinkedIn message, and Plaintiff has offered no competing evidence to dispute this fact. *See* ECF No. 50-6. Thus, a key consideration in *Mills*—that the employer had reached into Connecticut to recruit the employee—is not present here. *See Mills*, 2026 WL 25629, at *5. And in any event, the Court need not address § 52-59b(a)(1) since Plaintiff does not raise it as a basis for the exercise of jurisdiction, and has therefore waived the argument. *See, e.g.*, *Sullivan v. Snider*, No. 21-CV-916, 2023 WL 2317252, at *5 (2d Cir. Mar. 2, 2023) (summary order) ("Issues that are not sufficiently argued in the briefs are considered waived."); *see also Warren v. Garvin*, 219 F.3d 111, 113 n.2 (2d Cir. 2000). But even assuming—without deciding—that § 52-59b(a)(1) confers jurisdiction over Eurofins for this action, the Court finds that exercising personal jurisdiction over it would be inconsistent with due process.

### 2. *Due Process*

Exercising personal jurisdiction over Eurofins does not comport with due process because the Court cannot assert either general or specific personal jurisdiction.

First, the Court analyzes Eurofins' "minimum contacts" with the forum state. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) ("*Bank Brussels II*"). Where the claim arises out of or relates to a defendant's contacts with the forum—in other words, where a defendant has "'purposefully availed' itself of the privilege of doing business" in the forum state and "could foresee being 'haled into court'" there, the court has specific personal jurisdiction over the defendant. *See id.* (internal quotations and citations omitted). And where a defendant's forum contacts are "continuous and systematic," a court may assert general personal jurisdiction, irrespective of whether the lawsuit's claim is related to the defendant's forum contacts. *Id.*

11

General personal jurisdiction would not be appropriate here; Plaintiff has not alleged facts sufficient to show "continuous and systematic" contacts with Connecticut, and Eurofins' assertion that it is not registered to do business in Connecticut and does not maintain any place of business here is undisputed. ECF No. 50-1 at 3, 9.

Likewise, the Court may not exercise specific personal jurisdiction over Eurofins. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation"; but the defendant's "'relationship with a plaintiff . . . alone[ ] is an insufficient basis for jurisdiction.'" *Mills*, 2026 WL 25629, at *6 (citing *Walden v. Fiore*, 571 U.S. 277, 283–84, 286 (2014)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("Such unilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). In other words, a plaintiff "cannot be the 'only link between the defendant and the forum.'" *Mills*, 2026 WL 25629, at *6 (citing *Walden*, 571 U.S. at 285).

Here, Plaintiff does not contest Eurofins' sworn affidavit indicating that Plaintiff herself is Eurofins' only connection to the state. *See* ECF No. 50-3 ¶¶ 10–14 ("Eurofins MTS currently employs no individuals who reside in Connecticut . . . has not employed any individuals in Connecticut other than Ms. Donaldson . . . does not actively target Connecticut with business activity or advertising . . . [and] Ms. Donaldson was to work in North America Business Development Team for global sales"). Based on the record before the Court, Eurofins did not direct Plaintiff to take any action in Connecticut; rather, Plaintiff unilaterally chose to work from the state. *See* ECF No. 50-3 ¶¶ 7–8. Accordingly, Eurofins cannot be said to have purposefully availed itself of the benefits of doing business in Connecticut, and cannot be fairly expected to

12

foresee being "haled into court" here. *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) ("[A party] purposefully avail[s] itself of a forum by directing its agents . . . to take action there"); *Bank Brussels II*, 305 F.3d at 127  (exercise of specific jurisdiction requires that a defendant might foresee being "haled into court"); *Mills*, 2026 WL 25629, at \*7  ("[T]he act of hiring a single remote employee alone does not amount to 'a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State' sufficient to satisfy due process." ) (quoting *Walden*, 571 U.S. at 285) (internal quotation marks omitted in original).  Thus, the Court finds that it would be unfair, as a matter of due process, to exercise personal jurisdiction over Eurofins.

Having concluded that Eurofins lacks minimum contacts with Connecticut, the Court need not conduct the related inquiry to determine whether the exercise of personal jurisdiction would be reasonable under the circumstances of this case.  *See Mills*, 2026 WL 25629, at \*8.

In sum, the Court lacks personal jurisdiction over Eurofins.

## III.    DISMISS OR TRANSFER

Having concluded that the Court lacks personal jurisdiction over Eurofins, it would be improper for the Court to evaluate Eurofins' merits-based arguments for dismissal under Rule 12(b)(6). *See Arrowsmith v. United Press Intern.*, 320 F.2d 219, 221 (2d Cir. 1963) (recognizing that a court without personal jurisdiction over a defendant "lacks power to dismiss a complaint for failure to state a claim"); *Astra Veda Corp. v. Apollo Cap. Corp.*, No. 1:22-CV-7308, 2023 WL 4702094, at \*6 (S.D.N.Y. July 24, 2023) (collecting cases).  But the Court exercises its discretion to transfer this case to the District of Massachusetts.

### A. Legal Standard

Where a court lacks personal jurisdiction over a defendant, it retains the discretionary power to transfer, rather than dismiss, a case under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." *See Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111–112 (2d Cir. 2001) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962)) (where it lacks personal jurisdiction, a court may transfer under "predecessor" statute). If the case could have been brought in a different district, the court determines whether to exercise its discretion to transfer pursuant to Section 1404(a), considering factors such as:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (citation omitted). "Courts also routinely consider judicial economy . . . the interest of justice, and . . . the comparative familiarity of each district with the governing law." *Gamble v. DeJoy*, No. 3:22-CV-351 (VAB), 2024 WL 3742754, at *5 (D. Conn. Aug. 9, 2024) (quoting *Hale v. Iancu*, No. 3:19-CV-1963 (VLB), 2021 WL 9405460, at *3 (D. Conn. Feb. 23, 2021)). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015).

In deciding a motion to transfer, a court must accept all facts alleged in the complaint as true, but may also consider evidence outside the pleadings. *Manchin v. PACS Grp., Inc.*, No. 24-CV-8636 (LJL), 2025 WL 1276569, at *1 (S.D.N.Y. May 1, 2025). The movant must carry the burden of showing by "clear and convincing evidence" that the balance of convenience favors the alternative forum. *N.Y. Marine & Gen. Ins. Co.,* 599 F.3d at 113–114.

14

B. Discussion

Because it lacks personal jurisdiction over Eurofins, the Court must either transfer or dismiss this case. *See Goldlawr, Inc.*, 369 U.S. at 465. The Court finds that transfer to the District of Massachusetts is appropriate here.

First, this action could have been brought in the proposed transferee forum. Eurofins itself suggests transfer of the action to Massachusetts (albeit after seeking dismissal in the first instance). *See* ECF No. 50-1 at 11–13. Transfer to Massachusetts would cure the problem of personal jurisdiction over Eurofins. *See WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 365 (D. Conn. 2011) ("Transfer is favored to remove procedural obstacles including the lack of personal jurisdiction."); Eurofins' Am. Corp. Disclosure St., ECF No. 73 at 1 (stating that Eurofins has its principal place of business in Massachusetts). And venue is appropriate in Massachusetts, as Eurofins is subject to personal jurisdiction and thus "resides" there. *See* 28 U.S.C. §§ 1391(b)(1); 1391(c)(2).

Second, the interests of justice and judicial economy strongly favor transfer rather than outright dismissal. "The 'interests of justice' include transferring the case to a venue where personal jurisdiction is proper so that the merits of the plaintiff's claims may be reached." *Morales v. Schofield*, 174 F.R.D. 253, 258 (E.D.N.Y. 1997) (citing *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978)); *WorldCare Corp.*, 767 F. Supp. 2d at 365 (collecting cases); *Ascent Aerosystems Inc. v. Hill*, No. 3:24-CV-1075 (OAW), 2025 WL 562551, at *4 (D. Conn. Feb. 20, 2025) ("[I]f the court finds that it cannot exercise personal jurisdiction over Defendants, it is in the interest of justice to transfer the matter to a forum that can."). While this Court lacks personal jurisdiction over Eurofins and cannot hear the merits of this case, transfer will allow Plaintiff to proceed with her claim without re-filing. *See WorldCare Corp.*, 767 F. Supp. 2d at 368 (quoting *Spherion Corp. v. Cincinnati Financial Corp.*, 183 F. Supp. 2d 1052,

15

1059–60 (N.D. Ill. 2002)) ("[T]ransfer when venue is improper is in the interest of justice because dismissal of action that may be brought in another district is 'time-consuming' and may be 'justice-defeating.'"); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (transfer may "prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense" (internal quotation marks omitted)).

Certain other factors also favor transfer. Although Plaintiff chose to file suit in Connecticut, Plaintiff's choice of forum cannot stand because this Court does not have jurisdiction over Eurofins. Thus, this factor should not be given substantial weight in the transfer analysis. *See Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 112 (S.D.N.Y. 2007) (finding plaintiff's choice of forum "outweighed by the serious question as to whether there is personal jurisdiction over defendants in this district"). With respect to the location of prospective witnesses, Eurofins represents that the witnesses who were involved in the termination decision do not reside in Connecticut. And no Eurofins employees, other than Plaintiff, worked in Connecticut during or before Plaintiff's employment with the company. ECF No. 50-3 ¶¶ 10–11.

Additionally, despite that Plaintiff alleges that the erroneous drug testing occurred in Wallingford, Connecticut, the locus of operative facts related to Eurofins' decisions to hire and then terminate Plaintiff—the ultimate harm Plaintiff alleges—is not in Connecticut. Moreover, none of Plaintiff's interviews with Eurofins representatives occurred in Connecticut, and she does not dispute that she was required to travel outside of Connecticut—to New York and Massachusetts—for in-person meetings and trainings. *See, e.g.*, ECF No. 45 ¶¶ 21, 32. And Plaintiff's employment offer letter states that Plaintiff's position was "connected to the legal entity based in" Norwood, MA. *See* ECF No. 50-4 at 2. Indeed, most of the conduct at the center

of Plaintiff's claims—*e.g.*, "offer[ing] Plaintiff employment," "not affording Plaintiff the opportunity to undergo a new drug screening with a different company," "terminat[ing] Plaintiff's employment due to erroneous drug screening results . . . instead of fairly rectifying the situation," and "act[ing] in conscious disregard" of foreseeable harm to Plaintiff—was not conducted in Connecticut.  ECF No. 45 ¶¶ 62–64, 71, 72, 76.  Plaintiff, for her part, acknowledges that "decisionmakers" were not located in Connecticut, but "Massachusetts, Pennsylvania, and possibly New Jersey or New York."  ECF No. 56 at 10.  Based on the present record, it is most likely that the locus of operative facts is indeed in Massachusetts, where Eurofins' principal place of business is located.  ECF No. 73 at 1.  And a federal court in Massachusetts is fully capable of applying Connecticut law.  *See  Nova Grp. Inc. v. Universitas Education, LLC,* No. 3:11-CV-342 (AWT), 2011 WL 5570793, at *3 (D. Conn. Nov. 16, 2011); *Mak Mktg. Inc. v. Kalapos*, 620 F.Supp.2d 295, 311–12 (D. Conn. 2009) ("the 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states."); *see also Van Dusen*, 376 U.S. at 639 ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.").

The location of relevant documents and sources of proof, the convenience of the parties, and the availability of process to compel unwilling witnesses are "factors of minimal relevance" in light of modern technological advances and the close physical proximity of the District of Connecticut to the District of Massachusetts.  *See Pezzolanti v. Extensis Grp. LLC*, No. 23-CV-7276 (RER) (PK), 2024 WL 4573734, at *4 (E.D.N.Y. Oct. 23, 2024); *see also WorldCare Corp.*, 767 F. Supp. 2d at 367 ("in the age of computers and faxes, document location is seldom determinative").

In sum, the interests of justice, concerns for judicial efficiency, and the locus of operative facts heavily favor transfer to the District of Massachusetts, and the remaining factors are either not invoked by the parties or are entitled to minimal weight.  Accordingly, the Court will exercise its discretion to transfer the action, rather than dismissing it.

## IV.    CONCLUSION

For the reasons described herein, the Court concludes that it lacks personal jurisdiction over Eurofins.  Eurofins' pending motion to dismiss is GRANTED in part, with respect to its alternative request that the action be transferred to the District of Massachusetts.

The Clerk is directed to transfer this action to the District of Massachusetts.


**SO ORDERED** at Hartford, Connecticut, this 27th day of February, 2026.


 _/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE